BENJAMIN ASHUROV SBN 271716
bashurov@kb-ash.com
NEIL A. SMITH SBN 63777
nsmith@kb-ash.com
KYMBERLEIGH KORPUS SBN 217459
kkorpus@kb-ash.com
KB ASH LAW GROUP P.C.
2603 Camino Ramon, Suite 200
San Ramon, CA 94583
Telephone:   877.265.1476
Facsimile:    415.952.9325

*Attorneys for Plaintiff/Counterclaim-defendant*
KUDOS, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **KUDOS, INC.**, an Alberta, Canada Corporation,<br><br>        Plaintiff,<br>  v.<br><br>**KUDOBOARD, LLC**, a Louisiana Limited Liability Company; **Aaron Rubens,** an individual residing in California,<br><br>        Defendants. | CASE NO. 3:20-cv-01876-SI<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT RE: GENERICNESS AND LACHES**<br><br>Hearing date: October 29, 2021<br>Time: 10am<br><br>Hon. Susan Y. Illston |
| **KUDOBOARD, LLC**, a Louisiana Limited Liability Company; **Aaron Rubens,** an individual residing in California,<br><br>        Counterclaimant,<br>  v.<br><br>**KUDOS, INC.**, an Alberta, Canada Corporation,<br><br>        Counterclaim-defendant. | |

PLEAE TAKE NOTICE that pursuant to FRCP 56, on October 29, 2021 at 10am, plaintiff and counterclaim-defendant Kudos, Inc. ("**Plaintiff**" or "**Kudos**") will move for partial summary judgment dismissing with prejudice defendants Kudoboard, LLC and Aaron Rubens' (collectively "**Defendants**") Second Affirmative Defense and Counterclaim alleging that Plaintiff's KUDOS-containing marks are generic; and Defendants' Seventh Affirmative Defense alleging that Plaintiff's claims are barred by laches. *See* ECF No. 24. This motion ("**Motion**") is based upon this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the supporting declaration of Plaintiff's CEO Muni Boga ("**Boga Decl**."), the supporting declaration of Plaintiff's counsel Benjamin Ashurov ("**Ashurov Decl**."), and all pleadings and papers on file in this action and such further evidence that may be submitted to the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff's Complaint alleges that Defendants have infringed Plaintiff's rights in the mark KUDOS and in certain related KUDOS-containing marks (collectively, the "**KUDOS Marks**") federally registered with the U.S. Patent and Trademark Office ("**USPTO**"). ECF No. 1. For Defendants' Counterclaim and Second Affirmative Defense, Defendants allege that the KUDOS Marks are generic and are incapable of receiving protection as trademarks. ECF No. 24. In view of this alleged genericness, Defendants allege that Plaintiff's trademark registrations for the KUDOS Marks (collectively, "**KUDOS Registrations**") should be cancelled pursuant to 15 U.S.C. §§ 1064 and 1119. *Id.* Discovery has now closed, and the record is clear that there is no genuine issue as to any material fact relating to the validity and non-generic nature of the Kudos Marks, and that Plaintiff is entitled to a judgment as a matter of law that the KUDOS Marks are not generic. Likewise, the record is clear that no genuine issue exists as to any material fact relating to Defendants' laches defense and that Plaintiff is entitled to a judgment as a matter of law that Plaintiff's claims are not barred by laches.

### I.   INTRODUCTION

There is ***no*** evidence of record suggesting that the KUDOS Marks are understood by purchasers of Plaintiff's goods and services primarily as a reference to a *genus, class, or category* of any product or service offered by Plaintiff. The USPTO's Trademark Trial and Appeal has already upheld the distinctiveness of Plaintiff's marks in a decision that was litigated to conclusion on the

merits. It appears Defendants' genericness claim is merely a repackaged "mere descriptiveness" allegation. Repackaging "mere descriptiveness" allegations as "genericness" allegations is a tactic sometimes undertaken by defendants facing incontestable registrations. *See e.g., PayCargo, LLC v. CargoSprint LLC,* No. 1:19-CV-22995, 2021 WL 2592417, at *9 (S.D. Fla. June 4, 2021) (". . . the more glaring issue to the Court is that Defendants' genericism argument is a repackaged version of its prior argument at the preliminary injunction phase that the mark is merely descriptive."). This appears to be the strategy Defendants have deployed in this case in order to somehow throw into question the validity of Plaintiff KUDOS Marks and registrations – presumably to obtain leverage over Plaintiff. In doing so, Defendants have attempted to fit a square peg into a round hole and have advanced a meritless position which should be dismissed by the Court. Likewise, Defendants' laches defense should also be dismissed for the reasons set forth hereinbelow.

## II. STATEMENT OF ISSUES TO BE DECIDED

1.  Whether Defendants have come forward with sufficient evidence sufficient to create an inference disputing the presumption Plaintiff's KUDOS Marks and KUDOS Registrations are valid.

2.  Whether Defendants have come forward with any evidence sufficient to create an inference that application of laches bars Plaintiff's claims in this action.

## III. FACTUAL BACKGROUND

### a. Plaintiff's Business and Its KUDOS Marks

Plaintiff is a software company that has offered in U.S. commerce since at least as early as 2011 under the trademark KUDOS an intraorganizational social networking software solution (the "**Kudos Platform**") designed for use by customers (typically business and other organizations) as an internal communication tool, an employee engagement tool, and a "people" analytics tool. Boga Decl. ¶ 3. Built on the idea that positive reinforcement and meaningful engagement reduces absenteeism and apathy at work, the Kudos Platform is designed to facilitate positive communication and interaction among members of subscribing organizations in order to enhance engagement and morale. *Id.* ¶ 4.

Plaintiff operates its primary website at the domain name kudos.com. *Id.* ¶ 5. The Kudos Platform offers a variety of communication features typical of social networks. *Id.* ¶ 6. The Kudos Platform also offers a proprietary recognition system that enables users of the platform to recognize

other users for things like outstanding performance, achievement of workplace milestones like work anniversaries or promotions, or personal milestones like birthdays, and to send to the individuals being recognized "points" that correspond to the level of recognition being provided. *Id.* ¶ 7. Users of the Kudos Platform can redeem they points they have received for certain rewards like gift cards and other items of value specified by the administrators of each Kudos Platform subscriber account. *Id.* Given the types of activities the Kudos Platform facilitates, and the type of data and insight that can be generated from analyzing such activities from a bird's eye view, Plaintiff has also incorporated into the Kudos Platform analytics and performance management solutions for use by management or other organizational administrators. Management or administrators can receive insightful data regarding individual performance and engagement, and regarding organizational performance, unity, and culture. *Id.* ¶ 8. The Kudos Platform is offered in the form of a web application, downloadable application, and an integration widget enabling the Kudos Platform to be integrated with third party software solutions. *Id.* ¶ 9.

Since inception, Plaintiff has always used KUDOS as its primary brand name and source identifier. *Id.* ¶ 10. To protect its rights in KUDOS and other KUDOS Marks, Plaintiff has obtained numerous U.S. trademark registrations from the USPTO. *Id.* ¶ 11; Ashurov Decl. ¶¶ 5-15. Plaintiff has actively policed its KUDOS Marks against accused infringers, including by sending cease and desist demands, filing complaints in U.S. district court, and pursuing oppositions and cancellations before the TTAB. Boga Decl. ¶¶ 12-13. In a recent TTAB decision decided on the merits, the TTAB among other things confirmed the inherent distinctiveness and validity of Plaintiff's KUDOS Marks and Kudos Registrations. *Id.*, Ex. I at 11 ("Given the suggestive nature of Opposer's mark, and the paucity of evidence showing Opposer's ranking within the social networking field, we accord Opposer's mark an ordinary scope of protection.")

### b. Plaintiff's Awareness of Defendants and Their Use of KUDOBOARD

Plaintiff first became aware of Defendants in February of 2019. *Id.* ¶ 17. Following a series of discussions with Defendants about a business proposal Defendants sent Plaintiff, and later, about Defendants' objectionable use of KUDOBOARD, Plaintiff filed its Complaint in this action on March 17, 2020 (ECF No. 1). *Id.* ¶¶ 18-22.

## IV. LEGAL STANDARDS

### a. Summary Judgment

Summary judgment is appropriate where the record, read in the light most favorable to the non-moving party, indicates that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. Where party will have burden of proof on an element essential to its case at trial and does not, after adequate time for discovery, make a showing sufficient to establish the existence of that element, there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the nonmovant's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

### b. Trademark Genericness

The U.S. Supreme Court recently confirmed that a generic term is one that names a "**class**" of goods or services. *United States Pat. & Trademark Off. V. Booking.com B. V.*, 140 S. Ct. 2298, 2304, 207 L. Ed. 2d 738 (2020). ("First, a 'generic' term names a '**class**' of goods or services, **rather than any particular feature** or exemplification of the class.") (emphasis added) (*citing* §§ 1127, 1064(3), 1065(4) (referring to "the generic name for the goods or services")) (*citing also Park 'N Fly*, 469 U.S. at 194, 105 S. Ct. 658 ("A generic term is one that refers to the genus of which the particular product is a species.")). The relevant meaning of a term is its meaning to buyers. *Id*. (*citing Bayer Co. v. United Drug Co*., 272 F. 505, 509 (SDNY 1921) (Hand, J.) ("What do the buyers understand by the word for whose use the parties are contending?"). Concluding that booking.com was not generic, Justice Ginsburg wrote as follows:

> Under these principles, whether "Booking.com" is generic turns on whether that term, taken as a whole, signifies to consumers the class of online hotel-reservation services. **Thus, if "Booking.com" were generic, we might expect consumers to understand Travelocity—another such service—to be a "Booking.com."** We might similarly expect that a consumer, searching for a trusted source of online hotel-reservation services, could ask a frequent traveler to name her favorite "Booking.com" provider.

*Id.* at 2304–05 (emphasis added).

In determining whether a term is generic, courts rely on the "who-are-you/what-are-you" test set forth in *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1391 (9th Cir.1993). Under that test, a protectable mark "answers the buyer's question "who are you?" but the generic name of the product answers the question "what are you?" *See Premier Nutrition, Inc. v. Organic Food Bar, Inc*., No. SACV06-0827 AGRNBX, 2008 WL 1913163, at *4 (C.D. Cal. Mar. 27, 2008), aff'd, 327 F. App'x 723 (9th Cir. 2009) (internal quotations and citations omitted).  A court determining distinctiveness considers standards of meaning prevalent among prospective purchasers of the product or service. *Calista Enterprises Ltd. v. Tenza Trading Ltd*., 43 F. Supp. 3d 1099, 1115 (D. Or. 2014) (internal citation and quotation omitted). For a mark to be generic, a challenger must prove that consumers **primarily** understand the challenged term to refer to the genus or class of the goods and services offered by the trademark owner. *Elliott v. Google, Inc*., 860 F.3d 1151, 1156 (9th Cir. 2017) ("If the relevant public primarily understands a mark as describing 'who' a particular good or service is, or where it comes from, then the mark is still valid. But if the relevant public primarily understands a mark as describing 'what' the particular good or service is, then the mark has become generic.") (internal quotation omitted).  "In sum, we ask whether the primary significance of the term in the minds of the consuming public is the product and not the producer." *Id.*  To determine that a term is generic, **is it not enough that the term has some significance to the public as the name of an article; the primary significance of the term must be generic**. *E.g., Tiffany & Co. v. Costco Wholesale Corp*., 994 F. Supp. 2d 474, 481 (S.D.N.Y. 2014) (citation omitted) (emphasis added).

### c. Registered Marks Are Presumed Valid

Federal registration of a trademark endows it with a strong presumption of validity, including "the specific presumption that the trademark is not generic." *Id.* (quoting *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 604 (9th Cir.2005). To overcome this presumption,

the challenger must show by a preponderance of the evidence that the term was or has become generic. *Id.* (internal quotation and citation omitted). "The crucial date for the determination of genericness is the date on which the alleged infringer entered the market with the disputed mark or term." *Id.* (*quoting Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005)).

### d. Laches

Laches is an equitable limitation on a party's right to bring suit. To establish laches, a defendant must show an unreasonable delay by plaintiff in bringing suit, and prejudice to itself. Determining whether a plaintiff delayed unreasonably consists of (1) assessing the length of the delay and then (2) determining whether the delay was reasonable. *Kiva Health Brands LLC v. Kiva Brands Inc.,* 439 F. Supp. 3d 1185, 1191–92 (N.D. Cal. 2020) (internal quotations and citations omitted). The Court must establish the length of the delay measured from the time plaintiff knew, or in the exercise of reasonable diligence, should have known about its potential cause of action. *Id.* (internal quotation and citation omitted). The Court stops the clock on delay "when the lawsuit in which the defendant seeks to invoke the laches defense is initiated." *Id.* (*quoting Eat Right Foods Ltd. v. Whole Foods Mkt., Inc.*, 880 F.3d 1109, 1116 (9th Cir. 2018)). Courts are to decide whether a delay is reasonable "in reference to the limitations period for the analogous action at law." *Id.* (*quoting Jarrow Formulas,* 304 F.3d at 835. The most analogous state statute of limitations in this case is California's four-year statute of limitations for trademark infringement actions. *See Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1025 (9th Cir. 2018).

## V. ARGUMENT: PLAINTIFF'S KUDOS MARKS ARE NOT GENERIC

With respect to Defendants' genericness challenge, the inquiry is whether KUDOS, or any of Plaintiff's KUDOS Marks are primarily understood by purchasers of Plaintiff's goods and services to refer to the *genus* or *class* of Plaintiff's goods and services. Here, there is no record evidence supporting the idea that consumers understand, at all, and certainly not primarily, that the KUDOS Marks reference a genus of *any* class of goods and services, including Plaintiff's. Plaintiff's KUDOS Marks are registered with the USPTO and are therefore presumed to be not generic. *Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 148 (N.D. Cal. 2020). Defendants bear the burden of proving that the KUDOS Marks are generic and do not deserve protection as a

trademark. *Id*. A court determines whether a mark is generic by (i) identifying the category of goods or services to which the mark is meant to apply and (ii) analyzing whether the relevant consuming public's primary perception of the mark is as a source of a product or as a type, category, or kind of product. *Threshold Enterprises Ltd. v. Pressed Juicery*, Inc., 445 F. Supp. 3d 139, 148 (N.D. Cal. 2020).

### a. The Classes of Plaintiff's Goods and Services are Employee Engagement Software or Corporate Social Networking Software

Plaintiff's Kudos Platform can be described generically primarily as an intracompany social networking software or employee engagement software. Boga Decl. ¶ 3. It can also be described employee recognition and rewards software, social recognition software, or an employee experience platform. *Id*. This is consistent with Plaintiff's own description of its software in advertising and promotional materials, and with descriptions of Plaintiff's business in trade publications in and industry research papers. *See e.g.,* Boga Decl., Exs. E, J, K, L, M; Ashurov Decl., Exs. 15-47.

### b. There Is No Evidence Suggesting that KUDOS Is Primarily Understood By Consumers of Plaintiff's Software as a Reference to the Genus or Class of Plaintiff's Software

A Court considers several factors when determining whether a mark is generic. This includes uncontested generic use by competitors, generic use by the plaintiff, dictionary definitions, relevant media usage, testimony of persons in the trade, and consumer surveys. McCarthy on Trademarks and Unfair Competition § 12:13 (5th ed. 2020). Defendants have failed to come forward with any evidence of generic use in any of these categories. At best, Defendants have identified casual or descriptive uses of "kudos" on the internet, which of course, is not surprising given that "kudos" is a dictionary term. Even when viewed in the light most favorable to Defendants, such evidence is insufficient to overcome the presumption, and the overwhelming supporting evidence that Plaintiff's KUDOS Marks are not generic.

> i. <u>KUDOS in Dictionary Definitions</u>. Defendants have not come forward with any dictionary definitions suggesting that KUDOS is generic. A review of "kudos" in dictionaries confirms that "kudos" is not defined as any type of *class* or *genus* of any goods and services. Dictionary.com defines "kudos" as "honor, glory, acclaim." Ashurov Decl. ¶ 1. Similarly, Merriam

Webster dictionary defines "kudos" as (1) "praise given for achievement" and (2) "fame and renown resulting from an act or achievement." *Id.* ¶ 2. According to these definitions, KUDOS might be suggestive of Plaintiff's goods and services, as the TTAB recently found, but it is not generic. Boga Decl. ¶ 14 (TTAB Holding Plaintiff's KUDOS Marks to be suggestive). The word "escalator" is an apt comparison because "escalator" is a well-known case of a mark which became a generic categorical term. Merriam Webster defines "escalator" as a "a power-driven set of stairs arranged like an endless belt that ascend or descend continuously." Ashurov Decl. ¶ 3. This dictionary definition confirms that, unlike "kudos," "escalator" is generic because it defines the term as the *genus* or *class* of goods it represents, namely, a driven set of stairs. Under the who are you/what are you test, "escalator" would clearly answer the question "what are you?" In contrast, "kudos" does not answer the question "what are you?" In response to "what are you?", responding with "*I am a kudos*" would make no logical sense.

      ii.   <u>Plaintiff's Use of KUDOS</u>. Defendants have not come forward with any evidence suggesting Plaintiff uses KUDOS in a generic manner, *i.e.,* to refer to the *class* or *genus* of Plaintiff's goods and services. A review of Plaintiff's uses of KUDOS confirms that Plaintiff uses KUDOS as a trademark and source identifier for its goods and services. Boga Decl., Exs. A-F (showing use of KUDOS by Plaintiff as a trademark). Under the who are you/what are you test, Plaintiff's use of" kudos" without a doubt would answer the question "who are you?" and not "what are you?" *Id.*

      iii.   <u>Use By Trade Media in Plaintiff's Industry</u>. Defendants have not come forward with any trade media publications suggesting that KUDOS is used generically, *i.e.,* to refer to the *class* or *genus* of goods and services Plaintiff offers. Indeed, a review of relevant trade media publications in the employee recognition space shows that the prevalent generic term used to describe Plaintiff's goods and services is "employee recognition software." Boga Decl. Exs. J-L; Ashurov Decl., Exs. 15-47 (references to "Kudos" are highlighted in each exhibit). Of course, more than one generic term can exist, but there is no evidence that "kudos" is one of them. Moreover, such publications clearly refer to KUDOS as a source of a product or service, and not as a type of product or service. *Id.*

####    iv.   *Use By Competitors*

Defendants have not come forward with any evidence of generic uses of "kudos," i.e., uses of "kudos" as the *genus* or *class* of a good or service, by Plaintiff's competitors. To the contrary, one of Plaintiff's most direct competitors, Bonusly, refers to Kudos as the source of Plaintiff's goods and services. Ashurov Decl., Ex. 48. Moreover, product review websites containing Plaintiff's competitor's description of their products show no use of "kudos" in a generic manner. *See e.g.,* Ashurov Decl. Exs. 17, 19.

####    v.   *Testimony of Persons in the Trade and Consumer Surveys*

Defendants have not offered any testimony from persons in Plaintiff's trade and have not offered any consumer survey evidence to dispute the presumption, and other overwhelming supporting evidence that the KUDOS Marks are not generic. The only survey conducted in this action was a survey conducted by Plaintiff's expert witness Mark Keegan. Ashurov Decl., Ex. 49. While the survey was conducted for purposes of measuring a likelihood of confusion, and not genericness directly, the results of the survey suggest that consumer understand KUDOS as a trademark. *Id.* at 2 ("It is also notable that among respondents who indicated a belief that KUDOBOARD and KUDOS are the same company or are somehow affiliated, nearly half—44.7 percent—mentioned the **name similarity** between the two marks as a reason for their belief.") (emphasis added).

Defendants have disclosed an expert report prepared by a linguist named William Eggington which purports to support the idea that the KUDOS Marks are generic. However, at his deposition, he confirmed that his data offers no support for the idea that the KUDOS Marks are used to describe a class or genus of any kind of product or service. Ashurov Decl., Ex. 50, 222:4-19.

```
06:27:39   4    Q.  From your research do you understand kudos
06:27:42   5    to refer to any class or type or genus of a product?
06:27:52   6    A.  No, I didn't -- I'm not aware of any
06:27:59   7    because I didn't research that.
```

Courts have excluded linguists' reports for this very reason. See, e.g., *D. H. Pace Co., Inc. v. Aaron Overhead Door Atlanta LLC*, No. 1:17-CV-3430-MHC, 2021 WL 2821679, at *8 (N.D. Ga.

Mar. 2, 2021) (excluding linguistics expert report as "unhelpful" where linguistics expert did not answer the question of whether a disputed term was actually a genus of products or services). At best, William Eggington's report shows that internet users at times casually use "kudos" in a manner which is consistent with the term's plain dictionary meaning. This is unsurprising considering "kudos" is a dictionary term, and such usage offers no support to Defendants' claim of genericness. Accordingly, Eggington's report is insufficient to create an inference of genericness for "kudos."

## VI.     ARGUMENT: PLAINTIFF'S CLAIMS ARE NOT BARRED BY LACHES

Approximately 13 months passed from the time Plaintiff discovered Defendants and their objectionable use of KUDOBOARD until the time Plaintiff filed its Complaint in this action (ECF No. 1). Boga Decl. ¶¶ 17-22. For the majority of that time period, Plaintiff was engaged in discussions with Defendants about a potential business relationship, and later, about seeking an amicable resolution to Defendants' objectionable use of KUDOBOARD. *Id.* Accordingly, Plaintiff's "delay," if there was any, is well below the 4 year threshold that applies here, and Defendants' laches defense fails as a matter of law. *Jarrow Formulas,* 304 F.3d at 835.

## VII.    CONCLUSION

For the reasons set forth herein above, the Court should dismiss with prejudice Defendants' genericness counterclaim and Second Affirmative Defense of genericness. The Court should also dismiss with prejudice Defendants' Seventh Affirmative Defense of laches.

Dated: September 25, 2021                    Respectfully submitted,

**KB ASH LAW GROUP P.C.**

By:   /s/ Benjamin Ashurov
BENJAMIN ASHUROV
bashurov@kb-ash.com
NEIL A. SMITH
nsmith@kb-ash.com
KYMBERLEIGH KORPUS
kkorpus@kb-ash.com

*Attorneys for Plaintiff*
KUDOS, INC.