GINA DURHAM, Bar No. 295910
gina.durham@us.dlapiper.com
OSCAR M. OROZCO-BOTELLO, Bar No. 313104
Oscar.orozco-botello@us.dlapiper.com
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Tel: 415.836.2500
Fax: 415.836.2501

COLIN STEELE (*pro hac vice*)
colin.steele@us.dlapiper.com
DLA PIPER LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, NY 10020-1104
Tel: 212.335.4500
Fax: 212.335.4501

Attorneys for Defendants/Counterclaimants
KUDOBOARD, LLC AND AARON RUBENS

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KUDOS, INC., an Alberta, Canada Corporation,<br><br>Plaintiff,<br><br>v.<br><br>KUDOBOARD, LLC, a Louisiana Limited Liability Company; AARON RUBENS, an individual residing in California,<br><br>Defendants.<br><br>KUDOBOARD, LLC, a Louisiana Limited Liability Company; AARON RUBENS, an individual residing in California,<br><br>Counterclaimants,<br><br>v.<br><br>KUDOS, INC., an Alberta, Canada corporation,<br><br>Counterdefendant. | CASE NO. 3:20-cv-01876-SI<br><br>**DECLARATION OF AARON RUBENS IN SUPPORT OF DEFENDANTS/ CONTERCLAIMANTS' AARON RUBENS AND KUDOBOARD, LLC'S MOTION FOR SUMMARY JUDGMENT [REDACTED]**<br><br>Date:   October 29, 2021<br>Time:  10:00 AM<br>Crtrm: 1<br>Judge: Hon. Susan Illston<br>Original Complaint filed: March 17, 2020 |

I, Aaron Rubens, declare as follows:

1. I am a defendant/counterclaimant and the founder and CEO of Kudoboard, LLC, my codefendant/co-counterclaimant in the above captioned action (collectively "Kudoboard"), and I submit this Declaration based on my own personal knowledge, and upon information and belief based on investigation into the facts stated herein. I submit this declaration in support of Kudoboard's Motion for Summary Judgment, and if called to do so, I would competently testify as to these statements.

2. Kudoboard is an online greeting card company that provides a platform for consumers to create and send digital or printed greeting cards from groups of people. Kudoboard users can create one of Kudoboard's online group cards by (1) visiting www.kudoboard.com and creating an account, (2) choosing a recipient, (2) adding content such as a written message, picture, video, GIF, or any combination thereof, (3) inviting other members of a group such as friends, family, or colleagues to add their own content, and (4) delivering the card to the recipient either online or in a print version. In this litigation, Kudoboard produced publicly available overview videos that demonstrate the process of creating a group card with Kudoboard. **Exhibit 1** is a true and correct copy of one such publicly available video from 2015 that was produced as part of this litigation, bates stamped KUDOBOARD03274. This Exhibit is being manually filed with the Court.

3. Kudoboard also prepared a publicly available overview video in 2019 that demonstrates the process of creating a group card with Kudoboard. **Exhibit 2** is a true and correct copy of this video that was produced as part of this litigation, bates stamped KUDOBOARD03277. This Exhibit is being manually filed with the Court.

4. I developed the idea for Kudoboard when I was working as a high school math teacher with Teach for America from 2009 through 2011. At the end of each school year, I would ask my students to write their names on pieces of paper, which would then be passed around for each classmate to write something positive. Over the years, I would hear from my former students who would tell me they found this exercise very meaningful.

5. I founded Kudoboard in 2015 upon graduating from Harvard Business School. To found Kudoboard, I turned down a 6-figure job to instead build the business and invested over ten

thousand dollars of my personal savings to start the business from the ground up. From 2015 through mid-2017, I worked full-time on building the Kudoboard business, continued to invest my savings to keep the business afloat, and took no salary.

6. By mid-2017, the Kudoboard business had grown substantially, but was not yet generating sufficient revenue to independently support my family. Because I had new daughter on the way, I took a full-time day job, devoting my nights and weekends to work on Kudoboard.

7. By 2018, Kudoboard was successful enough that I could begin taking income and return to working on Kudoboard full time. Over the intervening years, Kudoboard has continued to grow, and we now have eight full-time employees, with four open positions for which we are actively recruiting.

8. I developed the name Kudoboard from the words "kudo" or "kudos," "a generic way to say appreciation," and "board," which references how the content appears.

9. On July 26, 2021, I was deposed by Mr. Benjamin Ashurov on behalf of Kudos Inc. ("Kudos"), in my individual capacity and as the corporate representative of Kudoboard under Rule 30(b)(6) of the Federal Rules of Civil Procedure. I testified about the history of Kudoboard, as we as to information surrounding the allegations in this litigation. **Exhibit 3** is a true and correct copy of excerpts from the official transcript of my deposition.

10. Kudoboard LLC has made continuous use of the term "Kudoboard" as a trademark (the "Kudoboard Mark") in commerce since July 1, 2015. **Exhibit 4** is a true and correct copy of Kudoboard's trademark records downloaded from the United States Patent and Trademark Office ("USPTO") Website, bates stamped KUDOBOARD00001.

11. Kudoboard created and registered the kudoboard.com domain on February 24, 2015. The website went live on March 11, 2015. **Exhibit 5** is a true and correct copy of an email I received from Wix, the website development company I used to create Kudoboard's website, confirming that the website was now connected to the kudoboard.com domain.

12. Kudoboard set up its public Twitter account in July of 2015. Kudoboard has actively and continually posted on its public Twitter since that time. **Exhibit 6** is a true and correct copy of

1  Kudoboard's Twitter page, showing a public post, dated July 23, 2015, produced as part of this
2  litigation, bates stamped KUDOBOARD05540.

3        13.    Kudoboard set up its public Facebook account on July 8, 2015.  Kudoboard has
4  actively and continually posted on its public Facebook since that time.  **Exhibit 7** is a true and
5  correct copy of Kudoboard's Facebook, showing the page created date, produced as part of this
6  litigation, bates stamped KUDOBOARD05497.

7        14.    **Exhibit 8** is a true and correct copy of Kudoboard's public Facebook page, showing
8  a public post, dated October 15, 2015, produced as part of this litigation, bates stamped
9  KUDOBOARD05493.

10       15.    **Exhibit 9** is a true and correct copy of Kudoboard's public Twitter page, showing a
11 public post, dated December 17, 2015, produced as part of this litigation, bates stamped
12 KUDOBOARD05520.

13       16.    Kudoboard also maintains a public YouTube page, and has posted videos to the
14 Kudoboard page since 2015. The YouTube page is publicly available here:
15 https://www.youtube.com/channel/UC12aGyLLYn-rtwJOw_JXxsQ/featured . **Exhibit 10** is a true
16 and correct copy of the public YouTube page.  For example, on October 3, 2015, Kudoboard posted
17 a how-to video guide to using Kudoboard here: https://www.youtube.com/watch?v=e9ioMn7x71E.
18 A true and correct copy of this how-to video, was produced as part of this litigation, bates stamped
19 KUDOBOARD03274, and is being manually filed with the Court. *See supra* ¶ 2 for Exhibit 1.

20       17.    Kudoboard LLC has also actively and regularly posted about Kudoboard on the blog
21 on its public website.  **Exhibit 11** is a true and correct copy of a public blog post on Kudoboard's
22 website, dated November 9, 2015, produced as part of this litigation, bates stamped
23 KUDOBOARD00953.

24       18.    **Exhibit 12** is a true and correct copy of a public blog post on Kudoboard's website,
25 dated December 17, 2015, produced as part of this litigation, bates stamped KUDOBOARD04784.

26       19.    From its inception in 2015, Kudoboard has attracted widespread media attention
27 across a host of digital news outlets.  **Exhibit 13** is a true and correct copy of Kudoboard's website,
28 publicly available at http://www.kudoboard.com/about-us, captured November 4, 2020, listing

1 articles written about Kudoboard dated between 2015 and 2020, produced in this litigation, bates number KUDOBOARD00085.

20. **Exhibit 14** is a true and correct copy of an article from Silicon Bayou News, publicly available at http://siliconbayounews.com/2015/09/15/meet-the-next-15-startup-ventures-heading-to-new-orleans-entrepreneur-week/, dated September 15, 2015, captured November 4, 2020, produced in this litigation, bates number KUDOBOARD00344.

21. **Exhibit 15** is a true and correct copy of an article from NOLA.com, publicly available at https://www.nola.com/news/business/article_27e813ba-1d6d-562e-8ab5-faf5ecae5b1d.html, dated October 27, 2015, captured November 4, 2020, produced in this litigation, bates number KUDOBOARD00584.

22. **Exhibit 16** is a true and correct copy of an article from NOLA.com, publicly available at https://www.nola.com/news/business/article_c390d3db-8736-5fea-8644-f1f84b036d16.html, dated December 2, 2015, captured November 4, 2020, produced in this litigation, bates number KUDOBOARD00337.

23. **Exhibit 17** is a true and correct copy of an article from JEDCO, publicly available at https://www.jedco.org/2016/01/meet-the-2016-jedco-challenge-finalist/, dated January 2016, captured March 7, 2021, produced in this litigation, bates number KUDOBOARD00685.

24. **Exhibit 18** is a true and correct copy of an article from Biz New Orleans, publicly available at https://www.bizneworleans.com/ditch-the-office-group-cards/, dated March 1, 2016, produced in this litigation, bates number KUDOBOARD00589.

25. **Exhibit 19** is a true and correct copy of an article from Free Technology for Teachers, publicly available at http://www.freetech4teachers.com/2016/10/kudoboard-create-digital-group-greetings.html#.WBC43JMrJAY, dated October 14, 2016, produced in this litigation, bates number KUDOBOARD00607.

26. In August of 2015, Kudoboard issued a press release announcing the launch of the consumer tier of Kudoboard. **Exhibit 20** is a true and correct copy of the press release, produced in this litigation, bates number KUDOBOARD03130.

27. Kudoboard for Business, a subscription option with different pricing for group e-cards, officially launched in April 2016.  **Exhibit 21** is a true and correct copy of what appears to be a LinkedIn screenshot produced by Kudos in this litigation, bates number KUDOS000631.

28. However, Kudoboard had been reaching out to business and other organization to provide its services long before then.  **Exhibit 22** is a true and correct copy of an email I sent on January 5, 2016 reaching out to a hospital to establish a potential partnership, produced in this litigation, bates number KUDOBOARD04455.

29. **Exhibit 23** is a true and correct copy of an email I sent on August 19, 2015, reaching out to the Khan Academy, regarding Kudoboard's potential in the "professional world," produced in this litigation, bates number KUDOBOARD04460.

30. Kudoboard's revenue has increased significantly over time, from approximately ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ **Exhibit 24** is a true and correct copy of Exhibit 11 from my deposition, taken as part of this litigation.

31. **Exhibit 25** is a true and correct copy of excerpts from Kudoboard's Supplemental Responses to Kudos's First Set of Interrogatories, served as part of this litigation.

32. Kudoboard has also experienced exponential growth. By the end of 2019, Kudoboard had a quarter of a million registered users.  **Exhibit 26** is a true and correct copy of an email I sent to query-9fkc@helpareporter.net, produced as part of this litigation, bates number KUDOBOARD01323.

33. Today, the number of Kudoboard users had grown to over 7 million. And, this user number is only a small fraction of the 22 million visitors to the Kudoboard website last year. *See supra* ¶9 at Exhibit 3 at 192:7–20, my deposition transcript.

34. Annual recurring revenue has also increased at a rapid rate. *See supra* ¶30 for Exhibit 24 at '118, Exhibit 11 of my deposition.

35. The first driver of Kudoboard's growth has been sustained efforts over the past six years to position itself as a brand leader in the eCard space. Kudoboard now ranks among the top 5 organic Google search results for terms such as "group ecard," "group card," and "virtual group

1  card." This is information that can be publicly obtained. This growth to the goodwill associated
2  with the Kudoboard mark is the result of six years of hard work and personal investment, all of
3  which would be lost if the Kudoboard name were discontinued.

4  36. The second driver of Kudoboard's growth has been "virality": users who have been
5  invited to contribute to a board later recalling Kudoboard and starting their own board. This viral
6  growth to the goodwill associated with the Kudoboard mark is the result of six years of hard work
7  and personal investment, all of which would be lost if the Kudoboard name were discontinued. *See
8  supra* ¶9 for Exhibit 3 at 104:5-9, 154:17-155:3. 190:14-191:4. 195:25-196:3, my deposition
9  transcript.

10  37. Word of mouth—users telling others about "Kudoboard"—is also a key input of the
11  aforementioned growth, and all of these existing positive associations and recommendations would
12  likewise be lost should Kudoboard LLC be ordered to cease use of its longstanding mark. *See supra*
13  ¶30 for Exhibit 24 at '117, Exhibit 11 of my deposition.

14  38. There are numerous third parties which make use of the term "kudos" in what appears
15  to be Kudos's claimed field of services. Examples of those uses are discussed in, among other
16  places, the excerpts of Kudoboard's Supplemental Responses to Kudos's First Set of Interrogatories,
17  *see supra* ¶31, Exhibit 25.

18  39. There are many trademark registrations and applications for Kudos, many of which
19  do not appear to be associated with Plaintiff. **Exhibit 27** is a true and correct copy of live trademark
20  registrations and applications from the USPTO Records incorporating the term "Kudo."

21  40. One such registration is for "KUDOTREE" (Reg. No. 4,764,618) for "On-line social
22  networking services," in class 45. **Exhibit 28** is a true and correct copy of the status page for this
23  registration on the USPTO website.

24  41. The "KUDOTREE" mark is in use on the Kudotree website. **Exhibit 29** is a true and
25  correct copy of the Kudotree website at http://kudotree.com/account/login, accessed on September
26  21, 2021.

27  42. Another example of such a registration is for "KUDOS 365" (Reg. No. 4,248,543)
28  in international classes 9 and 35 for "Computer software for advertising and marketing services that

connect businesses, supporters and nonprofits." **Exhibit 30** is a true and correct copy of the status page for this registration on the USPTO website.

43. The "KUDOS 365" mark is in use on the Kudos 365 website. **Exhibit 31** is a true and correct copy of the Kudos 365 website at https://www.kudos365.com/about, accessed on September 22, 2021.

44. **Exhibit 32** is a true and correct copy of a white paper produced by Kudos in this litigation, bates number KUDOS001967. I understand the white paper is publicly available on Kudos' website.

45. I reviewed the reviews of Plaintiff's services on the publicly available Capterra website. The Capterra website allows users to post reviews. In these reviews, customers repeatedly use the term "kudos" descriptively to describe their use of Plaintiff's Kudos. For example, in my review of customer reviews on Plaintiff's Capterra page, I found dozens of examples of the use of phrases like "kudos to," "give kudos," "send kudos," "kudos from," "receive kudos," and "get kudos." **Exhibit 33** is a true and correct copy of a document produced by Kudos in this litigation, bates number KUDOS001108.

46. Other registrations for KUDOS trademarks predate the Plaintiff's registration. **Exhibit 34** is a true and correct copy of the status page for the registration for KUDOS (Reg. No. 2,363,076), registered on June 27, 2000, on the USPTO website.

47. I did not know of Kudos when I selected the Kudoboard Mark in 2015 and only gained general knowledge of the company later in 2016. *See supra* ¶ 31 for Exhibit 25, Kudoboard's First Supplemental Responses to Kudos's First Set of Interrogatories.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 24th day of September, 2021, in Chicago, Illinois.

By: _____
AARON RUBENS