GINA DURHAM, Bar No. 295910
gina.durham@us.dlapiper.com
OSCAR M. OROZCO-BOTELLO, Bar No. 313104
Oscar.orozco-botello@us.dlapiper.com
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Tel:  415.836.2500
Fax:  415.836.2501

COLIN STEELE (*pro hac vice*)
colin.steele@us.dlapiper.com
DLA PIPER LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, NY 10020-1104
Tel:  212.335.4500
Fax:  212.335.4501

Attorneys for Defendants/Counterclaimants
KUDOBOARD, LLC AND AARON RUBENS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KUDOS, INC., an Alberta, Canada Corporation,<br><br>Plaintiff,<br><br>v.<br><br>KUDOBOARD, LLC, a Louisiana Limited Liability Company; AARON RUBENS, an individual residing in California,<br><br>Defendants. | CASE NO. 3:20-cv-01876-SI<br><br>**DEFENDANTS/COUNTERCLAIMANTS KUDOBOARD, LLC AND AARON RUBENS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>**[REDACTED]**<br><br>Date:    October 29, 2021<br>Time:    10 AM<br>Crtrm:  1<br>Judge:  Hon. Susan Illston<br>Original Complaint filed:  March 17, 2020 |
| KUDOBOARD, LLC, a Louisiana Limited Liability Company; AARON RUBENS, an individual residing in California,<br><br>Counterclaimants,<br><br>v.<br><br>KUDOS, INC., an Alberta, Canada corporation,<br><br>Counterdefendant. | |

# <u>TABLE OF CONTENTS</u>

**Page**

I.  INTRODUCTION ................................................................................................................1

II.  FACTUAL BACKGROUND ............................................................................................2

    A.  Plaintiff's Trademark And Business .........................................................................2

    B.  Plaintiff Has Admitted That The Term Kudos "Personifies" Its Services ................3

    C.  Plaintiff And Its Customers Use The Term "KUDOS" Generically In
        Reference To Plaintiff's Products .............................................................................3

    D.  Third Parties Frequently Use The Term "KUDOS" Generically And
        Without Any Reference To Plaintiff ..........................................................................4

    E.  Laches Background ....................................................................................................5

III.  ISSUES TO BE DECIDED (CIV. L.R. 7-4(A)(3)) ..........................................................5

IV.  LEGAL STANDARD ........................................................................................................5

    A.  The Question Of Whether A Trademark Is Generic Is Highly Fact-Intensive
        And Ill-Suited To Resolution On A Motion For Summary Judgment ......................5

V.  ARGUMENT ......................................................................................................................6

    A.  The Evidence Demonstrates That, At Minimum, There Are Questions Of
        Material Fact Concerning Whether The Kudos Marks Are Generic .........................6

    B.  The Evidence Demonstrates That Laches Bars Plaintiff's Claims..........................12

VI.  CONCLUSION .................................................................................................................14

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

5

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
744 F.3d 595 (9th Cir. 2014)............................................................................................ 2

6

7

*Bluetooth SIG, Inc. v. FCA US LLC*,
463 F. Supp. 3d 1169 (W.D. Wash. 2020) ....................................................................... 6

8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ......................................................................................................... 5

9

10

*CG Roxane LLC v. Fiji Water Co. LLC*,
569 F. Supp. 2d 1019 (N.D. Cal. 2008) ..................................................................... 10, 11

11

12

*Classic Foods Int'l Corp. v. Kettle Foods, Inc.*,
468 F. Supp. 2d 1181 (C.D. Cal. 2007)........................................................................... 11

13

*Clicks Billiards Inc. v. Sixshooters Inc.*,
251 F.3d 1252 (9th Cir. 2001)........................................................................................... 5

14

15

*Closed Loop Mktg., Inc. v. Closed Loop Mktg., LLC*,
589 F. Supp. 2d 1211 (E.D. Cal. 2008) .......................................................................... 11

16

*Cusano v. Klein*,
264 F.3d 936 (9th Cir. 2001)........................................................................................... 13

17

18

*E-Systems, Inc. v. Monitek, Inc.*,
720 F.2d 604 (9th Cir. 1983)...................................................................................... 2, 13

19

20

*Elliott v. Google, Inc.*,
860 F.3d 1156 (9th Cir. 2017).................................................................................... 7, 9

21

*Filipino Yellow Pages, Inc. v. Asian J. Publ'ns, Inc.*,
198 F.3d 1143 (9th Cir. 1999)................................................................................. 7, 8, 9

22

23

*Fitbug Ltd. v. Fitbit, Inc.*,
78 F. Supp. 3d 1180 (N.D. Cal. 2015) ..................................................................... 13, 14

24

25

*In Re Grupo Bimbo, S.A.B. DE C.V.*,
2021 WL 1748450 (TTAB Apr. 14, 2021) ...................................................................... 8

26

*Guess, Inc. v. Superior Court*,
176 Cal. App. 3d 473 (1986)........................................................................................... 13

27

28

*High Country Linens, Inc. v. Block*,
2002 WL 1998272 (N.D. Cal. Aug. 20, 2002) ............................................................... 14

*Internet Specialties W., Inc. v. Milon-DiGiorgio Enterprises, Inc.*,
  559 F.3d 985 (9th Cir. 2009)...............................................................................14

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
  304 F.3d 829 (9th Cir. 2002)...............................................................................13

*Miller v. Glenn Miller Prods., Inc.*,
  454 F.3d 975 (9th Cir. 2006)...............................................................................14

*Mission Imports, Inc. v. Superior Ct.*,
  31 Cal. 3d 921, 647 P.2d 1075 (1982) ................................................................13

*Murphy v. Hartford Acc. & Indem. Co.*,
  177 Cal. App. 2d 539 (1960)...............................................................................13

*Polar Bear Prods., Inc. v. Timex Corp.*,
  384 F.3d 700 (9th Cir. 2004)...............................................................................14

*Premier Nutrition, Inc. v. Organic Food Bar, Inc.*,
  2008 WL 1913163 (C.D. Cal. Mar. 27, 2008), *aff'd*, 327 F. App'x 723 (9th Cir.
  2009)...............................................................................................................9

*Roxbury Ent. v. Penthouse Media Grp., Inc.*,
  2008 WL 11339095 (C.D. Cal. Nov. 20, 2008) ....................................................12

*Saul Zaentz Co. v. Wozniak Travel, Inc.*,
  627 F. Supp. 2d 1096 (N.D. Cal. 2008) ...............................................................13

*Schwan's IP, LLC v. Kraft Pizza Co.*,
  460 F.3d 971 (8th Cir. 2006)...............................................................................11

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
  240 F.3d 832 (9th Cir. 2001)..................................................................................6

*Surgicenters of Am., Inc. v. Med. Dental Surgeries, Co.*,
  601 F.2d 1011 (9th Cir. 1979).............................................................................8, 9

*In Re The Consumer Prot. Firm PLLC*,
  2021 WL 825503 (TTAB March 2, 2021) ...............................................................8

*In Re The Original Pickle Shot, Inc.*,
  2021 WL 2679069 (TTAB June 9, 2021) .................................................................8

*Threshold Enter. Ltd. v. Pressed Juicery, Inc.*,
  445 F. Supp. 3d 139 (N.D. Cal. 2020) ...........................................................*passim*

*United States Pat. & Trademark Off. v. Booking.com B. V.*,
  140 S. Ct. 2298, 207 L. Ed. 2d 738 (2020) ..........................................................6, 7

**Statutes**

15 U.S.C. § 1064(3) ................................................................................................ 6

Cal. Civ. Proc. Code § 339 ............................................................................. 13, 14

Cal. Civ. Proc. Code § 343 ............................................................................. 13, 14

Fed. R. Civ. P. 56(a) ............................................................................................. 5

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.     INTRODUCTION**

3          Defendants/Counterclaimants Kudoboard, LLC ("Kudoboard LLC") and Aaron Rubens

4     respectfully submit this memorandum of law in opposition to Plaintiff/Counterdefendant Kudos,

5     Inc.'s motion for summary judgment (Dkt. 61, the "Motion" or "Mot.").

6          The Motion fails entirely to demonstrate that Plaintiff is entitled to summary judgment on

7     either (i) Defendants' claim that the term "KUDOS" as used in what Plaintiff defines as the

8     "KUDOS Marks" is generic when applied to certain of Plaintiff's goods and services or (ii)

9     Defendants' laches defense.  On the former point, Plaintiff claims in its Motion that its business

10    includes, and that the KUDOS Marks cover, "employee recognition … software" and "social

11    recognition software."  Plaintiff incorrectly asserts that for Defendants to defeat this Motion they

12    must prove that the "KUDOS Marks" are generic in relation to these services.  In actuality, the bar

13    is far lower, as Defendants need only direct the Court to the abundant evidence demonstrating that

14    the Motion must be denied and the issue tried by a jury.

15         That evidence includes admissions by Plaintiff that "KUDOS" "*personifies*" recognition and

16    the recognition category as well as a public acknowledgement of the inability of "KUDOS" to

17    function as a mark for the recognition category.  It also includes the multiple dictionary definitions

18    of the word "KUDOS" as synonymous with the word "recognition," as well as the facts that

19    Plaintiff, its employees, and the general public all use those terms synonymously.  The evidence

20    additionally shows that both Plaintiff and its customers frequently use the term "kudos" when

21    referring to Plaintiff's services rather than to identify the source of those services, and that numerous

22    third parties, including in Plaintiff's claimed field, utilize the term "kudos" generically and without

23    any reference to Plaintiff.  Together and separately, these undisputed facts are sufficient to

24    affirmatively demonstrate that the KUDOS Marks are generic in relation to recognition services,

25    and at a bare minimum mandate denial of Plaintiff's Motion.

26         As to laches, Plaintiff does little more than flatly claiming that it is entitled to summary

27    judgment on the issue, devoting only a single paragraph to its argument.  That brief passage is

28

1

1   riddled with errors.  First, Plaintiff fails even to mention, much less address, the six factors set out

2   in *E-Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604 (9th Cir. 1983) to be analyzed by Ninth Circuit

3   courts in evaluating a laches defense.  Second, the evidence shows that Plaintiff knew or should

4   have known of the basis for its claims no later than July of 2015, not February of 2019 (*contra* Mot.

5   at §III.b.), nearly five years before Plaintiff filed suit.  Finally, the statute of limitations applicable

6   to California state law infringement claims is two years, not four years (*contra* Mot. at 6:17–18).

7   This is ultimately a distinction without a difference, because Plaintiff's Complaint is barred by

8   laches irrespective of whether a two year or a four year statute of limitations is applied.

9          For the foregoing reasons, the Motion should be denied in full.

10  **II.      FACTUAL BACKGROUND**

11         **A.      Plaintiff's Trademark And Business**

12         "KUDOS"—the common and widely used noun that Plaintiff claims as its trademark—is

13  defined as "praise or honor: praise, credit, or glory for an achievement" or "acclaim or praise for

14  exceptional achievement."  Dkt. 66-12 at 4; *see also* Dkt. 66-14 (Expert Report of Dr. William

15  Eggington, the "Eggington Report") at ¶¶17–19 (per the Oxford English Dictionary, the terms

16  KUDOS and KUDO are used by English speakers to either express "(1) 'glory, fame or renown,' or

17  (2) to give praise, credit or congratulations to 'X' as in the expression KUDOS TO X").

18         Plaintiff has asserted that common noun against at least twenty-four parties in the past nine

19  years alone.  Plaintiff's characterization of its business morphs based on its current trademark

20  dispute, apparently to suggest similarities between its products and the alleged infringer "du jour."

21  *See generally* Dkt. 64 (Defendants' Motion for Summary Judgment, "Kudoboard MSJ") at § II.D.[1]

22  For purposes of the instant Motion, Defendants therefore respond to the products and services

---

[1]   Defendant's motion for summary judgment seeks a ruling that all of the claims in Plaintiff's
Complaint are barred pursuant to laches.  Should the Court grant the Kudoboard MSJ, leaving only
Defendants' cancellation counterclaim, the Court will lack subject matter jurisdiction over this
proceeding.  *See Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595,
598 (9th Cir. 2014) ("Because [plaintiff] has appealed only the dismissal of its trademark
cancellation claim, the first question we must decide is whether that claim would provide an
independent basis for subject-matter jurisdiction on remand standing alone. We conclude that it
would not.")  Thus, and for the avoidance of doubt, should the Court grant the Kudoboard MSJ this
action will be disposed of in its entirety.

2

1   Plaintiff claims its Marks cover in the Motion, namely "employee recognition … software" and

2   "social recognition software."[2]  Mot. at § V.a.[3]

3   **B.      Plaintiff Has Admitted That The Term Kudos "Personifies" Its Services**

4       Plaintiff's founder and Chief Customer Officer, Tom Short, has openly acknowledged that

5   the word "KUDOS" "personifies recognition," and asserted that while there are other "recognition

6   or reward-type terms that might feel right" the word "KUDOS" in particular "personifies the

7   [recognition] category."  Declaration of Gina Durham in Support of Opposition ("Durham Opp.

8   Decl.") at ¶2, Ex. 4 ("Short Depo.") 80:11–81:2.  Mr. Short further stated that, in light of the

9   foregoing, he was "surprised as heck" that Plaintiff was able to adopt the word "KUDOS" as a

10   trademark.  *Id.* at 80:17–20; *see also id.* at 77:9–12.

11       This is not the first time that Plaintiff has publicly acknowledged and admitted to the inability

12   of "KUDOS" to function as a mark for the recognition category.  In January of 2007, Plaintiff,

13   through its predecessor company[4] Rare Method Capital Corporation, applied to register "KUDOS

14   THANK DIFFERENT" as a trademark for the exact product Plaintiff claims to sell today[5]—a

15   "[w]eb based recognition system."  Dkt. 66-11 at 2.  The USPTO refused to grant that application

16   unless Rare Method included a disclaimer for the term "KUDOS," finding that term to be descriptive

17   of the products listed in the application:  "Applicant must insert a disclaimer of 'KUDOS' in the

18   application *because it is descriptive of applicant's services*."  Dkt. 66-12 at 4 (emphasis added).

19   Rare Method then submitted the requested disclaimer, acknowledging that it was disclaiming

20   exclusive rights in the term "KUDOS" as a trademark vis-à-vis its products.  Dkt. 66-13 at 3.

21   **C.      Plaintiff And Its Customers Use The Term "KUDOS" Generically In**

22   **Reference To Plaintiff's Products**

23       Both Plaintiff and its customers frequently use the term "kudos" when referring to Plaintiff's

24   ---
[2] This opposition is directed only to these two categories of services, which are referred to herein as
25   the "Services."
[3] *See also* Dkt. 1 at Ex. A, p. 20 (Reg. No. 4,641,604, for "KUDOS," covering, inter alia, "software
26   for use in the provision of recognition"); *id.* at Ex. A, p. 26 (Reg. No. 4,224,053, for "KUDOS,"
covering, inter alia, "employee recognition and reward system").
27   [4] *See* Durham Opp. Decl. ¶2, Ex. 4 (Deposition of Tom Short (Short Depo.)) at 85:16–24.
[5] Mr. Short testified ████████████████████████████████
28   ████████████████████████████████████████████.  *Id.* at 20:4–16.

3

services rather than to identify the source of those services.  *See generally* Dkt. 66-1 at 133:22–139:10; Dkt. 66-15 at 5 (Plaintiff's website, retrieved July 29, 2021) ("We've got lots of solutions for making sure everyone gets Kudos"); Dkt. 66-16 at '1254 (Plaintiff's support site) ("By default, Kudos are sent publicly.  If you would like to send your Kudos privately, you can do so…"); Dkt. 65-31 at '1975 (Plaintiff's white paper titled "Recognition Can Take You To The Moon," available on Plaintiff's website) (Plaintiff describing its products as a means of "giving everyone a way to say 'Kudos'"); Dkt. 65-32 (Capterra review website); Durham Opp. Decl. ¶3, Ex. 5 (Deposition of Nikki Weisgarber ("Weisgarber Depo.")) at 117:11–17, 123:3–14 (testifying that ███████████ ██████████████████████████████████████████████████████████████████████ ████ ).

### D. Third Parties Frequently Use The Term "KUDOS" Generically And Without Any Reference To Plaintiff

There are numerous examples of third parties, including in Plaintiff's claimed field, utilizing the term "kudos" generically and without any reference to Plaintiff.  *See* Dkt. 65-24 at 11:1–13:1 (collecting uses); Dkt. 9 (First Counterclaim) at ¶¶47–54 (same).  The Corpus of Contemporary American English ("COCA") which aggregates text from a variety of sources and genres is the only large (over one billion words), genre-balanced corpus of American English.  Dkt. 66-14 (Eggington Report) at ¶23.  COCA contains 2,760 hits for the term "KUDOS," and a review of a random selection of 200 of those results showed no association with Plaintiff.  *Id.* at ¶24.  Further, an analysis of "collocates"—the words appearing four words to the left and right of uses of the term "kudos"—revealed no connection to any third-party entity, including Plaintiff.  *Id.* at ¶¶25–26.

There is also abundant usage of the term "kudos" on social media as a common noun without any reference to Plaintiff.  As of July 20, 2021, the date of Dr. Eggington's report, there were 358,308 #KUDOS categorical references on Instagram[6] (*id.* at ¶21), 5,605 instances of the term "kudos" on the top "subreddits" utilizing the term on the Reddit website (*id.* at ¶32), and 53,000

---

[6] Hashtags are words or multi-word phrases that categorize content and track topics on social media sites like Twitter, Facebook, Instagram, and Pinterest.  *Id.* at ¶21.

Facebook posts "about" #KUDOS on Facebook (*id.* at ¶36). A review of thousands of these results showed ***none*** suggested any connection with Plaintiff, though they did show connections with ***other*** companies, for example, an Indonesia-based talent management also called "Kudos Inc." *Id.*

E. <u>**Laches Background**</u>

A full accounting of the facts showing that Plaintiff knew or should have known of Kudoboard LLC's uses of the "Kudoboard" Mark is set out in the Kudoboard MSJ (at 3–7, 9–11).[7]

## III. ISSUES TO BE DECIDED (CIV. L.R. 7-4(A)(3))

1. Whether the evidence shows that there is any dispute of material fact concerning whether the term "KUDOS" is a generic trademark as applied to "employee recognition and rewards software" and "social recognition software."

2. Whether Plaintiff has established that, as a matter of law, "no genuine issue exists as to any material fact relating to Defendants' laches defense" (Mot. at 1).

## IV. LEGAL STANDARD

Summary judgment is appropriate only where there is "no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). As Plaintiff acknowledges, "[i]n deciding a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Mot. at 4:10–11 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 255 (1986)).

A. <u>**The Question Of Whether A Trademark Is Generic Is Highly Fact-Intensive And Ill-Suited To Resolution On A Motion For Summary Judgment**</u>

Whether or not a mark is generic is ***itself*** a question of fact, making the issue particularly ill-

---

[7] Given that this portion of the Motion would plainly fail should Defendants prevail upon the Kudoboard MSJ, and to spare the Court unnecessary and duplicative briefing, Defendants are not copying these pages here. Defendants note that this opposition brief would be below the applicable page limit even if these eight pages were included

1   suited to resolution on a motion for summary judgment.  *See Stuhlbarg Int'l Sales Co. v. John D.*

2   *Brush & Co.*, 240 F.3d 832, 840 (9th Cir. 2001).  As such, even where a mark is "presumptively

3   valid" in light of a registration, evidence showing that mark may be generic—for example, evidence

4   that a plaintiff uses its own mark generically—demonstrates that there are "triable issues of fact"

5   which cannot be weighed on a motion for summary judgment.  *See Bluetooth SIG, Inc. v. FCA US*

6   *LLC*, 463 F. Supp. 3d 1169, 1186 (W.D. Wash. 2020), ("Although the BLUETOOTH word mark is

7   presumptively valid [because it has been registered], [defendant] has rebutted that presumption with

8   survey evidence and evidence that [plaintiff] itself uses the word 'Bluetooth' generically.  The Court

9   will not weigh that evidence on summary judgment, so whether the BLUETOOTH word mark is

10  generic poses triable issues of fact.").  Thus, and contrary to Plaintiff's assertions (Mot. at 6–7),

11  there is no burden here on Defendants to "prov[e] that the Kudos Marks are generic."  Rather, to

12  defeat the Motion, Defendants need only point to evidence demonstrating the existence of any

13  material issue of fact.  *See Bluetooth*, 463 F. Supp. 3d at 1186.  The fact that the Kudos Marks are

14  registered (Mot. at § IV.c) does not change this.  *See Bluetooth*, 463 F. Supp. 3d at 1186.

15  **V.    ARGUMENT**

16          **A.    <u>The Evidence Demonstrates That, At Minimum, There Are Questions Of</u>**

17                  **<u>Material Fact Concerning Whether The Kudos Marks Are Generic</u>**

18          A trademark is generic when the "primary significance of the registered mark to the relevant

19  public rather than purchaser motivation shall be the test for determining whether the registered mark

20  has become the generic name of goods or services on or in connection with which it has been used."

21  15 U.S.C. § 1064(3).  A court determines whether a mark is generic by "(i) identifying the category

22  of goods or services to which the mark is meant to apply and (ii) analyzing whether the relevant

23  consuming public's primary perception of the mark is as a source of a product or as a type, category,

24  or kind of product."  *Threshold Enter. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 148 (N.D.

25  Cal. 2020).  Per the authority cited by Plaintiff, the question in this analysis in this case is whether

26  "a consumer, searching for a trusted [service to provide employees with recognition], could ask [an

27  acquaintance] to name her favorite [service for providing employees with] '[kudos].'"  *United States*

28

*Pat. & Trademark Off. v. Booking.com B. V.*, 140 S. Ct. 2298, 2305, 207 L. Ed. 2d 738 (2020). Some courts refer to this as the "who are you/what are you" test.  Under this test, "if the relevant public primarily understands a mark as describing 'what' the particular good or service is, then the mark has become generic." *Elliott v. Google, Inc.*, 860 F.3d 1156 (9th Cir. 2017).[8]

Evidence relevant to this inquiry includes "dictionary definitions of the components of the marks, social media posts using the term [the mark is comprised of], [and] media usage …. [and] competitor usage of [that term]."  *Threshold*, 445 F. Supp. 3d at 149.  Because Defendants have established that there are outstanding issues of fact which bear on each of the foregoing points, the Court should deny this portion of the Motion.

### 1.    *Plaintiff's Founder Admits That the Kudos Mark "Personifies" Recognition.*

Plaintiff's founder and Chief Customer Officer, Tom Short, has publicly asserted that the word "KUDOS" "*personifies recognition*," and further claimed that while there are other "recognition or reward-type terms that might feel right," the word "KUDOS" in particular "*personifies the [recognition] category*."  *See* § II.B, *supra*.  Mr. Short further stated that, in light of the foregoing, he was "surprised as heck" that Plaintiff was able to adopt the word "KUDOS" as a trademark.  *Id*.  These concessions establish that the Kudos Mark is generic in relation to the Services.  *See Booking.com*, 140 S. Ct. at 2304 ("[A] 'generic' term names a 'class' of goods or services.").  Further, Plaintiff, through its predecessor in interest, has previously acknowledged the inability of "KUDOS" to function as mark for the recognition category by submitting a disclaimer for the "kudos" component of its previous "KUDOS THANK DIFFERENT" application.  *See*

---

[8] Though Plaintiff claims otherwise, the question of whether or not the Kudos Marks are, in fact, generic, is not at issue on this Motion.  Should the Court reach it for any reason (it should not), Defendants respectfully submit that the evidence definitively shows and will show should this case proceed to trial that Plaintiff's marks are generic in relation to the Services.  For example, the questions "what is your favorite service for providing employees with 'recognition?'" and "what is your favorite service for providing employees with 'kudos?'" *are the same question*.  Thus, allowing Plaintiff to preclude others from utilizing the term "kudos" in this space would effectively "grant [Plaintiff] a monopoly, since a competitor could not describe his goods as what they are." *Filipino Yellow Pages, Inc. v. Asian J. Publ'ns, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999).  However, for purposes of the present Motion the Court need only decide whether there are *any* outstanding questions of material fact which bear on these issues.  As set out herein, there are many.

§ II.B, *supra*.  The foregoing is strong evidence that "kudos" is generic in relation to the Services. *See Filipino Yellow Pages, Inc. v. Asian J. Publ'ns, Inc.*, 198 F.3d 1143, 1148 (9th Cir. 1999) (affirming district court's finding that term was generic based on fact "that the PTO requires the use of a disclaimer regarding rights to the term"); *Threshold*, 445 F. Supp. 3d at 152 (finding mark to be generic on motion for summary judgment based upon, inter alia, fact that "the USPTO required [plaintiff] to disclaim exclusive rights to the words"); *see also In Re The Original Pickle Shot, Inc.*, 2021 WL 2679069, at *8 (TTAB June 9, 2021) (Because of the "disclaimer … apart from the mark as a whole [on the Supplemental Register], the genericness of the term as applied to the goods cannot seriously be questioned.") (citation omitted).  This evidence is sufficient to affirmatively demonstrate that the Kudos Marks are generic in relation to the Services, and at a bare minimum raises questions of material fact on the issue, mandating denial of the Motion.

**2.**     ***The Dictionary Evidence Shows That There Are, At Minimum, Questions Of Fact Concerning Whether The Kudos Marks Are Generic.***

In determining whether a term is generic, courts place "significant" weight on dictionary definitions.  *See Filipino Yellow Pages*, 198 F.3d at 1148; *see also Surgicenters of Am., Inc. v. Med. Dental Surgeries, Co.*, 601 F.2d 1011, 1015 n.11 (9th Cir. 1979) (similar).  For a term to be found generic, it is not necessary for the dictionary definition to wholly encompass the goods and services at issue, it need only name an important feature or purpose of those services.  *See In Re The Consumer Prot. Firm PLLC*, 2021 WL 825503 *2 (TTAB March 2, 2021) (quoting *In re Reed Elsevier Props. Inc.*, 482 F.3d 1376, 82 USPQ2d 1378, 1380 (Fed. Cir. 2007)).  Further, "[t]here can be more than one generic term for a particular genus of goods or services." *In Re Grupo Bimbo, S.A.B. DE C.V.*, 2021 WL 1748450, at *12 (TTAB Apr. 14, 2021).

Contrary to Plaintiff's claim (Mot. at § V.b.i), there are numerous dictionary definitions for "KUDOS" in evidence which demonstrate, at minimum, that there are questions of fact as to whether the term "KUDOS" is generic in respect of the Services.  The dictionary definitions for "Kudos" are all integrally related to recognition.  *Supra* § II.A .  The sample sentence for the definition for the term "Kudos" from dictionary.com is illustrative: "He received kudos from everyone on his

performance." Rubens Opp. Decl. ¶2, Ex. 1. Plaintiff uses the term in the exact same fashion in its advertising materials, referring to its products as "giving everyone a way to say 'Kudos'" in a white paper titled "*Recognition* Can Take You To The Moon." Dkt. 65-31 at '1975 (emphasis added). The only difference here is that Plaintiff has capitalized the word "Kudos," which makes no difference in determining whether or not a mark is generic. *See Elliott*, 860 F.3d at 1162, n.10 ("[W]e cannot rely on grammatical formalism to determine what a speaker has in mind when using a registered trademark."). Plaintiff's deponents have also offered a similar definition of the term. *See* Short Depo. at 76:13–22; Weisgarber Depo. at 114:22–115:12. This strongly indicates that the Kudos Marks are generic, and at minimum raises questions of material fact on the issue. *See Surgicenters*, 601 F.2d at 1015 (affirming district court's summary judgment decision finding mark to be generic based upon fact that dictionary definitions showed that "the challenged service mark 'Surgicenter' was simply an 'abbreviation of surgical functions as an adjective to identify a center as a concentration of facilities relating to surgeons or surgery'"); *Filipino Yellow Pages*, 198 F.3d at 1145 (affirming district court's summary judgment decision finding terms generic based upon, inter alia, their "presence in the dictionary"); *Threshold*, 445 F. Supp. 3d at 150 ("[T]he dictionary definition evidence tends to show the components are at least descriptive of the characteristics of the products the marks cover and that the composite marks are therefore generic.").

### 3. *The Evidence Shows That Plaintiff Uses The KUDOS Mark In A Generic Manner.*

Contrary to Plaintiff's claims (Mot. at § V.b.ii.) there is ample evidence here that Plaintiff uses the term "kudos" in a generic manner—i.e. primarily to describe what Plaintiff's recognition Services are, rather than who provides them. *See* § II.C, *supra*. A party using its own mark in a generic manner, as Plaintiff does here, is strong evidence that mark is in fact generic, a fact Plaintiff's own cases recognize. *See Elliott*, 860 F.3d at 1162 ("Generic use of a mark by the holder of that mark can support a finding of genericide."); *see also Filipino Yellow Pages*, 198 F.3d at 1145 (finding plaintiff's generic uses of "Filipino Yellow Pages" mark, namely agreeing "not to compete in the Filipino Directory (Filipino Yellow Pages) market in California," supported district court's determination that mark was generic); *Premier Nutrition, Inc. v. Organic Food Bar, Inc.*, 2008 WL

9

1    1913163, at *5 (C.D. Cal. Mar. 27, 2008), *aff'd*, 327 F. App'x 723 (9th Cir. 2009) ("The use of a

2    term by the one seeking trademark protection is highly instructive of how the relevant public thinks

3    of the term."); *CG Roxane LLC v. Fiji Water Co. LLC*, 569 F. Supp. 2d 1019, 1030 (N.D. Cal. 2008)

4    ("Plaintiff's use of the term 'bottled at the source' is likewise inconsistent with its assertion that the

5    mark is not generic. Defendant presents evidence of plaintiff using the phrase 'bottled at the source'

6    on its own bottle in describing the product as well as in its advertising."); 2 McCarthy on Trademarks

7    and Unfair Competition § 12:13 (5th ed.).  Plaintiff's own customers use the term "kudos" in the

8    same way—i.e. to refer to the services Plaintiff provides, rather than to Plaintiff, and even use the

9    terms "thanks" and "kudos" interchangeably when discussing Plaintiff's services.  *See* Dkt. 65-32

10   at 4 (customer review of Plaintiff's services on Capterra website) ("[Y]ou can't spend points unless

11   you receive them from others giving you *thanks/kudos*.") (emphasis added); Durham Opp. Decl. ¶3,

12   Ex. 5 at 123:3–14 (testifying that ████████████████████████████████████████████

13   ██████████████████████████████████████████████).   Again, at minimum, the

14   foregoing evidence demonstrates that there are contested questions of fact on this issue, precluding

15   summary judgment.

16       **4.    *Third Parties Use The KUDOS Mark In A Generic Manner.***

17       Plaintiff's unsupported assertions that its use of KUDOS is unique (Mot. at § V.b.iv.), is

18   belied by evidence of a significant amount of third parties using the word "kudos" generically in

19   reference to their own employee recognition products without any reference to Plaintiff.  *See* § II.D,

20   *supra*.  For example, Kudoboard has identified over fifty distinct third parties that use "kudos" in

21   connection with employee recognition products.  *Id.*  Similarly, Kudoboard identified numerous

22   uses of the term "Kudos" as an adjective modifying a noun for purposes of appreciation and

23   recognition by third parties.  This includes, by way of example, LinkedIn, a well-known employee

24   and business networking website, which gives its users the ability to give one another "Kudos":

25

26

27

28



Rubens Opp. Decl. ¶3, Ex. 2, *id.* ¶4, Ex. 3; *see also See* Dkt. 65-24 at 11:1–13:1 (collecting third party uses of Kudos); Dkt. 9 at ¶¶47–54 (same).[9]  This evidence demonstrates that there are contested questions of material fact on this issue, precluding summary judgment.  *See Schwan's IP, LLC v. Kraft Pizza Co.,* 460 F.3d 971, 973 (8th Cir. 2006) (determining that the mark "brick oven" could not be trademarked in reference to pizza because competitors used the phrase concurrently with the plaintiff); *Threshold*, 445 F. Supp. 3d at 152 (finding mark to be generic based upon, inter alia, fact that numerous third parties used mark "not to reference the product that [plaintiff] sells, but to describe a type of small beverage"); *CG Roxane*, 569 F. Supp. 2d at 1028 (finding mark to be generic based on evidence that "fifty other bottled water companies … use the phrase 'bottled at the source' to describe their products to consumers"); *Closed Loop Mktg., Inc. v. Closed Loop Mktg., LLC*, 589 F. Supp. 2d 1211, 1219, n.6 (E.D. Cal. 2008) ("Significant use of a term by competitors in the industry has traditionally been recognized … as indicating genericness.") (internal citation omitted); *Classic Foods Int'l Corp. v. Kettle Foods, Inc.*, 468 F. Supp. 2d 1181, 1190 (C.D. Cal. 2007) ("Federal courts … view usage of [a] term by competitors … as strong evidence of how the public perceives the term.  The more members of the public see a term used by competitors in the field, the less likely they will be to identify the term with one particular producer.").

---

[9] Plaintiff's claim that a single competitor has used the term "Kudos" to refer to Plaintiff, rather than its services (Mot. at 9:3–7), certainly does not outweigh these numerous generic uses.  If anything, this simply demonstrates that there are contested issues of fact, precluding summary judgment.

1      Further, there is evidence of abundant generic use of the term "kudos" on social media, and

2   a large sampling of those usages revealed no mention whatsoever of Plaintiff.  *See* § II.D , *supra*.

3   Once again, this is sufficient to, at minimum, call into question whether the evidence shows that the

4   Kudos Marks are generic.  *See Threshold*, 445 F. Supp. 3d at 152 (citing Instagram posts using

5   plaintiff's mark without any reference to plaintiff as evidence "demonstrat[ing] that [mark] is being

6   used generically, not as an indicator of source").

7          **5.     The TTAB'S Prior Determination Regarding The Kudos Mark Is Factually**

8                 **Inapposite, And Is Not Binding Upon This Court.**

9      Plaintiff is mistaken that a prior determination from the TTAB[10] finding Plaintiff's mark to

10  be "***highly*** suggestive" (*id.* at 10 (emphasis added)) does anything to salvage its case.  The TTAB's

11  prior analysis focused on the "KUDOS mark as registered for 'Internet-based social networking

12  services.'"  *Id.* at 9.  In finding that the Kudos Marks are suggestive with respect to social networking

13  services, the TTAB actually demonstrated why those Marks are generic when applied to the Services

14  here, by emphasizing that Plaintiff's social networking services allow users to "'*give kudos*' to one

15  another."  *Id.* at 10 (emphasis added).  Regardless, as with all TTAB decisions, this decision "is not

16  binding on this Court."  *Roxbury Ent. v. Penthouse Media Grp., Inc*., 2008 WL 11339095, at *2

17  (C.D. Cal. Nov. 20, 2008).[11]

18      In any case, the KUDOS mark used in connection with internet-based social networking is

19  not the subject of this opposition.  Rather, Defendants argue here that the Kudos Marks are generic

20  as applied to "employee *recognition* and rewards software" and "social *recognition* software,"

21  services which (i) are synonymous with "kudos" and (ii) Plaintiff itself claims its marks "personify"

22  (*see* § II.A, § II.B, *supra*).

23          **B.     The Evidence Demonstrates That Laches Bars Plaintiff's Claims**

24      In a section of its Motion most charitably described as cursory, Plaintiff attempts to argue in

25  a single paragraph that Defendants' entire laches defense should fail as a matter of law.  Mot. at

---

[10] *See* Dkt. 61-10 (Boga Decl. in support of Motion, Ex. I (*Kudos Inc. v. Kudo, Inc. dba Kudo Technologies* (T.T.A.B., March 2, 2021)).

[11] In this respect, it bears noting that it appears Plaintiff did not disclose its predecessor in interest's disclaimer of KUDOS (*see* § II.B, *supra*) in the prior proceeding before the TTAB.

1    § VI.  Unsurprisingly, Plaintiff fails to make its case, and errs on a host of points.  First, Plaintiff

2    fails even to mention, much less address, the six factors the Ninth Circuit set out in *E-Systems, Inc.*

3    *v. Monitek, Inc.*, 720 F.2d 604 (9th Cir. 1983) for courts to analyze in evaluating a laches defense.[12]

4    Second, the uncontested evidence shows that Plaintiff knew or should have known[13] of the basis for

5    its claims no later than July of 2015, not February of 2019 (*contra* Mot. at § III.b.), nearly five years

6    before Plaintiff filed suit.  *See* Kudoboard MSJ at 3–7, 9–11.

7         Finally, the statute of limitations applicable to California state law infringement claims is

8    two years, not four years (*contra* Mot. at 6:17–18).  The Supreme Court of California has made clear

9    that "[a]n action for trademark infringement sounds in tort."  *Mission Imports, Inc. v. Superior Ct.*,

10   31 Cal. 3d 921, 931, 647 P.2d 1075 (1982).  Therefore, and as with other causes of action sounding

11   in tort, trademark and unfair competition claims are subject to the two-year statute of limitations set

12   out in Cal. Civ. Proc. Code § 339, not the four-year catch-all provision set out in Cal. Civ. Proc.

13   Code § 343.  *Murphy v. Hartford Acc. & Indem. Co.*, 177 Cal. App. 2d 539, 544 (1960) ("Liability,

14   as used in section 339, subd. 1 includes responsibility for torts, and is applicable to all actions at law

15   not specially mentioned in other portions of the statute."); *see also Guess, Inc. v. Superior Court*,

16   176 Cal. App. 3d 473, 479 (1986) (applying two-year limitations period under § 339 to claims for

17   trade libel); *Cusano v. Klein*, 264 F.3d 936, 950 (9th Cir. 2001) (same, to claims for violation of

18   right of publicity). The outcome dictated by these cases—that Lanham Act claims are presumptively

19   barred by laches after two years of delay pursuant to section 339—has increasingly gained traction

20   in the Ninth Circuit, particularly in this district.  *See, e.g. Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d

21

22   _____

[12] (1) strength and value of trademark rights asserted; (2) plaintiff's diligence in enforcing mark; (3)
harm to senior user if relief denied; (4) good faith ignorance by junior user; (5) competition between
23   senior and junior users; and (6) extent of harm suffered by junior user because of senior user's delay
[13] "A determination of whether a party exercised unreasonable delay in filing suit consists of two
24   steps." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002).  "First, [a
     court] assess[es] the length of delay, which is measured from the time the plaintiff knew or should
25   have known about its potential cause of action."  *Id.*  Accordingly, in making this assessment either
     actual or constructive knowledge of the alleged infringement is sufficient to establish a period of
26   delay.  *Saul Zaentz Co. v. Wozniak Travel, Inc.*, 627 F. Supp. 2d 1096, 1109–10 (N.D. Cal. 2008).
     Constructive knowledge is judged "from an objective reasonable person standard, and therefore, a
27   trademark owner is chargeable with the information it might have received had due inquiry been
     made."  *Id.*  This standard "imposes on a trademark owner the duty to police its rights against
28   potential infringers."  *Id.*

13

1180, 1190 (N.D. Cal. 2015) ("[T]he Court believes … that the line of cases assuming the four-year limitation period in Section 343 is applicable to trademark infringement and unfair competition claims is questionable."); *High Country Linens, Inc. v. Block*, 2002 WL 1998272, at *2 n.1 (N.D. Cal. Aug. 20, 2002) ("[A] common law trademark infringement claim is … limited by Cal. Civ. P. Code § 339."); *see also Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 719–720 (9th Cir. 2004) (finding that, because a claim for state trademark infringement "generally sounds in tort," Montana's three-year statute of limitations for unspecified tort actions applied thereto).

Where courts have applied a four-year statute of limitations, they have generally done so based upon an agreement of the parties with no substantive analysis of the issue. *See, e.g., Internet Specialties W., Inc. v. Milon-DiGiorgio Enter., Inc.*, 559 F.3d 985, 990 (9th Cir. 2009) ("Neither party disputes the imputation of the four-year limitations period."); *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 (9th Cir. 2006) ("The parties agree that a four year statute of limitations applies to all of Plaintiffs' claims."). These decisions fail to address, and are inconsistent with, the authority from the Supreme Court of California.

While the foregoing authority establishes that a two-year statute of limitations is applicable, the Court may ultimately find it unnecessary to resolve this issue, because all of Plaintiff's claims are untimely whether the Court applies a two-year or a four-year statute of limitations. Such was the case in *Fitbug Ltd.*, 78 F. Supp. 3d at 1190, where the court explained that because it had "previously found that the laches period began four and a half years before [plaintiff] filed suit, [plaintiff's] claims are presumptively untimely even under the four-year period it urges." Here, Plaintiff knew or should have known of the basis for its claims at least as early as July 2015, nearly five years before it filed suit. Because Plaintiff did not initiate this action until March 2020, nine months after the longer potentially applicable period (March 2019), there is a "strong presumption" that laches bars each of the claims in the Complaint regardless of which statute of limitations applies.

## VI.    CONCLUSION

For the foregoing reasons, the Motion should be denied in full.

1
2     Dated:  October 8, 2021                    **DLA PIPER LLP (US)**

3                                                By:  */s/ Gina Durham*
                                                     _____
4                                                     GINA DURHAM
                                                     COLIN STEELE
5                                                     OSCAR M. OROZCO-BOTELLO

6                                                     Attorneys for Defendants/Counterclaimants

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28